United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eddy Perera-Gonzalez, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 20-23973-Civ-Scola |
| Jorge Rodriguez and City of Hialeah, | ) |
| Florida, Defendants. | ) |

**Order Granting Motion to Dismiss and Motion to Strike**

Plaintiff Eddy Perera-Gonzalez seeks damages from Defendants Jorge Rodriguez, a law enforcement officer, and the City of Hialeah (the "City"), Rodriguez's municipal employer, for injuries Perera-Gonzalez alleges he sustained when Rodriguez shot him in the neck. (1st Am. Compl. ("Compl."), ECF No. 16.) The City has filed a motion to dismiss (City's Mot., ECF No. 19), arguing Perera-Gonzalez fails to state a claim for failure to train, failure to supervise, or negligent hiring. Rodriguez answered the complaint but also filed a motion to strike Perera-Gonzalez's claim for punitive damages (Rodriguez's Mot., ECF No. 23). Perera-Gonzalez opposes both motions (Pl.'s Resp. to the City, ECF No. 25; Pl.'s Resp. to Rodriguez, ECF No. 28) and the City and Rodriguez have both timely replied (City's Reply, ECF No. 32; Rodriguez's Reply, ECF No. 33). After careful review, the Court agrees with the Defendants and **grants both** the City's motion to dismiss (**ECF No. 19**) and Rodriguez's motion to strike (**ECF No. 23**).

1. **Background**[1]

Suffering from depression and suicidal thoughts, in October 2017, Perera-Gonzalez grabbed a machete and climbed on top of the roof of a residence in Hialeah, Florida. (Compl. ¶¶ 7–10.) While on the roof, Perera-Gonzalez cut his own throat with the machete. (*Id.* ¶ 11.) Members of the Hialeah Police Department responded to the scene and surrounded the building. (*Id.* ¶ 12, 14.) Officers V. Estrada, E. Gonzalez, Y. Rodriguez, M. Lopez, and O. Mejia maintained a secure perimeter around the building while Defendant Rodriguez held a position between thirty and fifty feet from Perera-Gonzalez. (*Id.* ¶¶ 13–14.) While Perera-Gonzalez was seated on the roof and not holding the machete, Rodriguez fired a single shot at Perera-Gonzalez, striking him in the neck. (*Id.* ¶¶ 15–16.) Perera-Gonzalez was taken to the hospital for his injuries and placed

---

[1] The Court generally accepts the Plaintiff's factual allegations as true for the purposes of evaluating the Defendants' motions. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

under arrest. (*Id.* ¶ 17.) Members of the Hialeah Police Department told Perera-Gonzalez's family that he had been shot "in order to save him." (*Id.* ¶ 28.)

A "Complaint/Arrest Affidavit," prepared by either Rodriguez or the other officers, charged Perera-Gonzalez with armed burglary and assault or battery; resisting an officer with violence; and aggravated assault on a law enforcement officer. (*Id.* ¶¶ 18–20.) The criminal complaint, or arrest affidavit, relays that, when the officers arrived on scene, Rodriguez was bleeding from his neck and making motions of throwing the machete at the officers. (*Id.* ¶¶ 19.) The document goes on to say that Rodriguez, who was directly below Perera-Gonzalez, gave repeated warnings for Perera-Gonzalez to drop the machete. (*Id.*) Continuing, the affidavit recounts that Perera-Gonzalez then swung the machete "in a throwing motion" towards Rodriguez who then fired one shot. (*Id.*) According to that complaint, the officers did not know at that time whether Perera-Gonzalez had been struck by that shot. (*Id.*) Ultimately, the Miami-Dade State Attorney dismissed the initial three charges and charged Perera-Gonzalez, via information, with burglary of an unoccupied dwelling with aggravated assault. (*Id.* ¶ 22.)

A video of the incident, broadcast on the nightly news, depicts Perera-Gonzalez, sitting on the roof, disoriented. (*Id.* ¶ 25.) In the video, Perera-Gonzalez is not holding a machete or making any motions of throwing or swinging a machete. (*Id.*) The video also shows Perera-Gonzalez grabbing his neck when he was shot, with blood appearing all over his body. (*Id.*) According to Perera-Gonzalez, the news footage "clearly reflects an unarmed man who is not threatening anyone," and who is then "shot in the neck for no apparent reason." (*Id.* ¶ 26.) Perera-Gonzalez maintains that "from Sergeant J. Rodriguez's vantage point, it was clear Mr. Perera-Gonzalez was not a threat to the Sergeant or to any other officer on the scene." (*Id.* ¶ 27.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A

court must dismiss a plaintiff's claims if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Federal Rule of Civil Procedure 12(f), on the other hand, provides that the Court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is a "drastic remedy to be resorted to only when required for the purposes of justice." *Slone v. Judd*, 2009 WL 5214984, at *1 (M.D. Fla. Dec. 29, 2009) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.,* 306 F.2d 862, 868 (5th Cir. 1962)).

### 3. Analysis

#### A. Perera-Gonzalez fails to state a claim against the City for failure to train or supervise.

The City argues Perera-Gonzalez's complaint fails to state a claim against it for a failure to train or supervise because it does not set forth facts that would support either a finding of an express official custom or policy or a showing of deliberate indifference. (*E.g.*, City's Mot. at 1.) In response, Perera-Gonzalez insists his allegations are sufficient, rejecting the City's contention that the allegations are conclusory or lacking in any way. (Resp. to City at 4–5.) After review, the Court agrees with the City: Perera-Gonzalez has not stated a claim against the City for either a failure to train or supervise.

"In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (cleaned up). Ordinarily, though, "a pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.*; *see also Gold v. City of Miami,* 151 F.3d 1346, 1351 (11th Cir.1998) ("[The Eleventh Circuit repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise.")

Perera-Gonzalez argues his allegations in paragraphs twenty-nine and forty-one of his complaint sufficiently set forth facts showing a "pattern of similar constitutional violations by untrained employees." (Pl.'s Resp. to City at 4.) The Court disagrees. In these paragraphs Perera-Gonzalez states only that the City knew "its officers would regularly encounter individuals suffering from depression and suicidal behavior" and that, because of its failure to train, "city police officers would use unnecessary, and potentially deadly, force on [such] individuals." (Compl. ¶¶ 29, 41.) These allegations are wholly conclusory and

devoid of any actual supporting facts: they simply amount to bare assertions about an unspecified number of people who supposedly experienced unnecessary force, of some unspecified type, during an unknown period of time. This is not enough. "Instead, it is clear that the claim outlined [here] arises from a single incident and the actions of [one officer]." *Weiland*, 792 F.3d at 1329.

Even if a plaintiff is unable to establish a pattern, however, he may still state a claim for failure to train or supervise by setting forth facts that show "the need to train and supervise in a particular area is 'so obvious' that liability attaches for a single incident." *Id.* (quoting *Gold,* 151 F.3d at 1352). Perera-Gonzalez maintains he has met this standard by alleging (1) he "was illegally shot by [Rodriguez] while sitting on a roof top, having just cut his own throat with a machete and not threatening the officer"; and (2) "the need for specialized training and supervision of armed officers interacting with suicidal persons is 'so obvious' that it amounts to a deliberate indifference to the Constitutional rights of the persons with whom police have contact." (Pl.'s Resp. to City at 5.) Again, though, Perera-Gonzalez's allegations are not enough. "[C]ontentions 'that police officers were inadequately trained in diagnosing the symptoms of emotional illness[ ]fall[] far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city.'" *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1172 (11th Cir. 1995) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part)); *see also Weiland*, 792 F.3d at 1329 n. 20 (citing *Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir.1990), for the proposition that "a sheriff's department was not liable for a deputy's act where no evidence of a history of widespread prior abuse put the department on notice of the need for improved training or supervision") (cleaned up). Without more, Perera-Gonzalez's allegations do not establish the City's liability with respect to his failure-to-train and failure-to-supervise counts.

### B. Perera-Gonzalez fails to state a claim against the City for negligent hiring.

Perera-Gonzalez also insists his negligent-hiring allegations are sufficient. Without citing any supporting caselaw, he points to his allegations that Rodriguez had (1) a "prior record relating to the use of excessive force and veracity" and (2) a "lack of experience in responding to suicidal and depressed persons" as demonstrating the City's deliberate indifference in hiring Rodriguez. (Pl.'s Resp. to City's Mot. at 6.) After review, the Court finds Perera-Gonzalez's allegations fall far short of asserting a plausible claim for negligent hiring under 42 U.S.C. § 1983.

      The standard for establishing a negligent-hiring claim under § 1983 is exacting: "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 (1997). Mere indifference alone, then, is not enough. *Id.* Rather, "[t]o impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1313 (11th Cir. 2001).

      Under this standard, Perera-Gonzalez's claim fails because it is based on nothing more than conclusory allegations, unsupported by any actual facts. For example, Perera-Gonzalez's points to Rodriguez's "prior record relating to use of excessive force and veracity" and his "lack of experience in responding to suicidal and depressed persons" as sufficiently detailing "the specific ways that Sergeant Rodriguez was unfit." (Pl.'s Resp. at 6 (quoting Compl. ¶ 55).) From these allegations, however, the Court has no way of knowing what actual background details should have led the City to conclude that the "plainly obvious consequence" of hiring Rodriguez would have resulted in the deprivation of the constitutional rights alleged in this case. Further, although Perera-Gonzalez informs that Rodriguez has a record "*relating* to [the] use of excessive force and veracity" (emphasis added), he doesn't contend any actual misconduct and certainly doesn't detail what, exactly, that misconduct might have even been. In other words, Perera-Gonzalez fails to supply allegations that would establish "that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff" in this case. *Brown*, 520 U.S. at 412 (emphasis in original).

      Perera-Gonzalez's allegation that the "City's failure to check [Rodriguez's] background amounted to deliberate indifference to the risk that a violation of Plaintiff's [c]onstitutional rights would follow the hiring decision" (Compl. ¶ 55) fares no better. Instead, it amounts to only a formulaic recitation of the elements of his claim: it is purely conclusory and devoid of factual support. To be sure, the Court finds nothing in Perera-Gonzalez's allegations that would establish that Rodriguez's record, if reviewed, would have necessarily alerted the City that the complaint's alleged constitutional violations would be the plainly obvious consequence of its hiring decision. *See Brown*, 520 U.S. at 414 (concluding that "inadequate scrutiny" of a deputy's record "cannot constitute 'deliberate indifference'" to the violation of a plaintiff's constitutional rights unless facts show the deputy's alleged use of excessive force would have "necessarily" "been a plainly obvious consequence of the hiring decision").

In sum, Perera-Gonzalez's allegations fall far short of establishing a negligent-hiring claim against the City.

### C. The Court strikes Perera-Gonzalez's claim for punitive damages against Rodriguez.

Perera-Gonzalez maintains he is entitled to punitive damages because the allegations of his complaint "successfully plead excessive force and therefore show [Rodriguez] had a serious disregard for the consequences of his actions when he shot an unarmed man who was not a threat to anyone and suffering from a suicidal and depressive episode." (Pl.'s Resp. to Rodriguez's Mot. at 3.) According to Perera-Gonzalez, then, allegations sufficient to state a claim for excessive force, by definition, are sufficient to state a claim for punitive damages. The Court disagrees and further concludes that Perera-Gonzalez's bare allegations regarding his entitlement to punitive damages are otherwise conclusory.

"Punitive damages are appropriate under § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others.'" *Wright*, 919 F.2d at 670 (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)). In evaluating a Fourth Amendment excessive-force claim, on the other hand, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). That is, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* And so, therefore, an officer could quite conceivably use excessive force, in violation of the Fourth Amendment, without having acted with evil motive or intent or even callous or reckless indifference. Perera-Gonzalez's premise, then, that the allegations that state a claim for excessive force necessarily state a claim for punitive damages is unavailing.[2]

Next, Perera-Gonzalez cites to paragraph thirty-seven of his complaint to show that he sufficiently alleged "Rodriguez acted maliciously and with callous and reckless indifference." (Pl.'s Resp. to Rodriguez's Mot. at 2.) Paragraph thirty-seven, in turn, recites just that: "Rodriguez was acting maliciously with callous and reckless indifference towards the Plaintiff's federally protected right."

---

[2] Perera-Gonzalez's reliance on *Atkinson v. Israel*, 1:15-CV-61716-UU, 2015 WL 13239188, at *5 (S.D. Fla. Dec. 10, 2015) (Ungaro, J.) is unpersuasive. In that case the court pointedly noted that the "[p]laintiff's version of the facts indicate, quite clearly, that the [o]fficers' use of force was grossly—if not exceptionally—disproportionate to the . . . need of such force."

(Compl. ¶ 37.) This allegation is not enough. Instead, the complaint must go beyond such bare conclusory allegations and "plead specific acts" demonstrating the entitlement to punitive damages. *Black v. Kerzner Int'l Holdings, Ltd.*, 12-60301-CIV, 2013 WL 11971270, at *2 (S.D. Fla. May 20, 2013) (Snow, Mag. J.).

  The other allegations Perera-Gonzalez points to do not salvage his claim. For example, in his complaint, Perera-Gonzalez describes news footage[3] that "clearly reflects an unarmed man who is not threatening anyone be shot in the neck for no apparent reason." (Compl. ¶ 26.) Perera-Gonzalez further alleges that, from "Rodriguez's vantage point, it was clear that Mr. Perera-Gonzalez was not a threat to [Rodriguez] or to any other officer on the scene." (*Id.* ¶ 27.) First, while the video may reflect one vantage point indicating Perera-Gonzalez was not a threat, it offers no support for Perera-Gonzalez's bare conclusion that Rodriguez, positioned elsewhere, acted maliciously or with callous or reckless indifference. While the facts alleged might allow for a finding that Rodriguez acted unreasonably, any more than that simply cannot be inferred from these allegations.

  Likewise, Perera-Gonzalez's allegations regarding what he alleges is a false and misleading "Complaint/Arrest Affidavit" are equally unavailing. First, there are no facts alleged to support the supposition that Rodriguez purposely fabricated the affidavit. Further, Perera-Gonzalez does not even allege that Rodriguez himself was necessarily responsible for drafting what he describes as the misleading portions of the affidavit. Instead, Perera-Gonzalez posits that the affidavit was either prepared by Rodriguez *or* prepared on his behalf and that it was also prepared "in concert with the other officers" who had been present at the scene. Next, Perera-Gonzalez fails to supply facts that would establish the falsity of the affidavit, either in part or in its entirety. Rather, he conclusory maintains it is "false, misleading and a complete fabrication" without any detail or factual support. And, ultimately, much of what is presented in the affidavit is actually wholly consistent with the complaint's allegations. Lastly, Perera-Gonzalez fails to explain, in any event, how Rodriguez's supposedly fabricating

---

[3] The Court notes that Rodriguez filed what he describes as television footage of the incident. The Court has no way of knowing if this is the same news footage Perera-Gonzalez references in his complaint. Further, Rodriguez does not describe the video as being either central to Perera-Gonzalez's complaint or undisputed. Lastly, the video is of poor quality, the people depicted are speaking Spanish, and no translation has been provided. In consideration of all these factors, the Court declines to consider the video in rendering its decision on Rodriguez's motion. *C.f. Jones v. Automobile Ins. Co. of Hartford, Connecticut,* 917 F.2d 1528, 1531–32 (11th Cir.1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court."); *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005) (recognizing that exhibits filed in conjunction with a motion to dismiss *may* be considered provided they are central to the complaint and undisputed).

an affidavit, *after* allegedly applying the excessive force he is accused of, would result in punitive damages in conjunction with the excessive-force claim itself.

Ultimately, then, based on the above analysis, the Court agrees that Perera-Gonzalez's punitive-damages demand should be struck from the complaint.

### 4. Conclusion

For the reasons set forth above, the Court **dismisses, with prejudice**, Perera-Gonzalez's claims against the City (**counts two, three, and four**) because he has failed to a claim under Rule 12(b)(6); and **strikes** Perera-Gonzalez's **demand for punitive damages** against Rodriguez because it is unsupported by the facts alleged in his complaint. Accordingly, the Court **grants** both the City's motion to dismiss (**ECF No. 19**) as well as Rodriguez's motion to strike (**ECF No. 23**).

Further, the Court **denies** Perera-Gonzalez's requests for **leave to amend**, inserted, seemingly, as afterthoughts in his opposition to both motions (Pl.'s Resp. to the City at 4, 7; Pl.'s Resp. to Rodriguez at 5): these requests are procedurally defective as well as lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up).

Finally, the Clerk is directed to **terminate** the City of Hialeah from this case; the case will proceed, on count one, against Rodriguez only.

**Done and ordered** at Miami, Florida, on May 19, 2021.

Robert N. Scola, Jr.
United States District Judge